**Robert C. MYERS, Petitioner–Appellant,**

v.

**Debbie MAHAFFEY, Warden, Respondent–Appellee.**

No. 01–7049.

United States Court of Appeals, Tenth Circuit.

April 24, 2002.

Before MURPHY, McKAY, and BALDOCK, Circuit Judges.

## ORDER AND JUDGMENT [*]

BALDOCK, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Robert C. Myers appeals the denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. Because petitioner has not made a substantial showing of the denial of a constitutional right, we deny his application for a certificate of appealability and dismiss the appeal.

Petitioner is currently in the custody of the Oklahoma Department of Corrections, serving concurrent sentences for one count of shooting with intent to kill, one count of arson, and one count of burglary. His convictions are based on the following trial testimony.

On April 13, 1997, petitioner and two friends, Randy Walker and Steven Williams, entered Lee Harris' property without permission and broke into an old house. Petitioner was carrying an H & R twelve-gauge shotgun. The intruders spent approximately thirty minutes in the house, and had placed several stereo components by the back door when Harris and his wife arrived. Upon hearing noises and noticing that the back door was open, Harris and his wife retrieved guns from their truck and approached the house. When Mrs. Harris ordered the intruders out of the house, Walker appeared at the doorway. Mr. Harris testified that he then saw someone step out from behind the ice box and bear down on them with what looked like a gun with a long barrel. Mrs. Harris testified that she saw Walker step to the side and reach for something. Mr. Harris stepped in front of his wife and shot at the intruders, killing Walker.

According to petitioner's testimony, Mr. Harris continued to shoot at the house, and one of the bullets grazed petitioner's temple. When Williams dove out of a window, Harris shot him. Williams ran away, and Harris chased him a short distance. When Mr. Harris bent to look under the trees to locate Williams, petitioner shot him in the back. Petitioner testified that he shot Harris because after watching Harris shoot his friends, petitioner thought that he would be next. Petitioner also testified that had he wanted to, he could have aimed and killed Harris, but that he did not intend to kill him. After being shot, Harris and his wife returned to their truck and drove to the hospital. Harris called the sheriff on the way and reported the incident.

Petitioner testified that after shooting Harris he reloaded his gun and hid behind some mattresses for approximately twenty minutes. When he heard crackling noises and saw flames, he ran from the house. A sheriff's investigator arrived at the house and saw smoke. He called the fire department, who came and extinguished the fire. Firefighters found Walker's remains in the house, as well as an H & R twelve-gauge

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

shotgun near the origin of the fire. When petitioner was apprehended later that evening, he smelled strongly of smoke. Fire investigator Simmons inspected the burned house and concluded that the fire had been set intentionally in the kitchen area.

When petitioner was questioned the day after the incident, his story was quite different from the above testimony. Petitioner told investigators that he and his friends were on their way to go fishing when they came upon the abandoned residence. Petitioner said that he was looking for snakeroot in the yard when he heard gunshots from the other side of the house. Petitioner rounded the corner of the house and saw a man firing a weapon. Petitioner claimed that he turned around and fled because the man was shooting at him, and that as he ran away he pointed his shotgun over his shoulder and fired behind himself. Petitioner told the investigators that after he shot at the man, he ran into the old house and hid.

Petitioner was charged with shooting Harris with intent to kill, second degree arson, and burglary. During trial, Harris testified that although he had run people off his property in the past, he had never drawn a gun on them. The trial court refused to allow petitioner to impeach this testimony through statements by nine witnesses that Harris had drawn a gun on them in the past. Petitioner was convicted on all counts, receiving a life sentence on the first count and concurrent five-year sentences on the other two counts.

On appeal, he argued to the Oklahoma Court of Criminal Appeals that (1) the exclusion of the nine impeachment witnesses deprived him of the ability to present a self-defense theory; (2) the evidence was insufficient to show an intent to kill or that he committed arson; (3) he was prejudiced by prosecutorial misconduct; and (4) the trial court abused its discretion in admitting certain photographs. The state appellate court rejected these arguments, holding that (1) the rules of evidence did not permit impeachment by extrinsic evidence, and, in any event, the testimony of the nine witnesses was irrelevant because petitioner was unaware of Harris' past actions against other trespassers; (2) the evidence was sufficient to sustain petitioner's convictions for shooting with intent to kill and second degree arson; (3) the one incident of alleged prosecutorial misconduct to which petitioner objected was cured by the trial court's admonishment to the jury, and the remaining incidents did not rise to the level of plain error; and (4) the trial court did not abuse its discretion in admitting the photographs.

In this § 2254 proceeding, petitioner argued only that the exclusion of the impeachment witnesses denied him the right to present a defense, that the evidence was insufficient to show an intent to kill, and that he was denied a fair trial due to prosecutorial misconduct. The magistrate judge to whom the case was assigned recommended that habeas relief be denied because petitioner failed to show that the state appellate court's decision was contrary to clearly established federal law or was an unreasonable determination of the facts based on the evidence. The district court adopted the magistrate judge's recommendation. Petitioner appeals.

Before we may consider his appeal, petitioner must obtain a certificate of appealability by making a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). He may do so by demonstrating that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Upon review of petitioner's argu-

ments, the magistrate judge's report and recommendation, and the entire record on appeal, we conclude that the district court's decision is not fairly debatable among reasonable jurists.

■ First, petitioner has not shown that he was deprived of due process when the state trial court excluded the impeachment testimony. Oklahoma's evidentiary rule prohibiting impeachment by extrinsic evidence is not arbitrary or disproportionate to its purpose of preventing the trial from revolving around a collateral issue, and thus did "not abridge [petitioner's] right to present a defense." *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). This is especially true given the lack of evidence that petitioner knew about the prior incidents.

■ More importantly, the exclusion of this testimony did not "infringe[ ] upon a weighty interest of the accused," *id.,* because petitioner had a full opportunity to present his version of the facts, in addition to the undisputed evidence that Harris shot first at the intruders. *See id.* at 316–17, 118 S.Ct. 1261. The trial court's refusal to give a self-defense instruction was not related to its exclusion of the impeachment witnesses, but instead, was premised on petitioner's failure to present evidence that he retreated, which is required under Oklahoma law before a trespasser can claim self-defense. *See* State R., Vol. III at 540–42.

■ Petitioner also has not raised a debatable issue regarding the sufficiency of the evidence to support his conviction for shooting with intent to kill. A reasonable jury could believe that petitioner had the requisite intent when he shot Harris in the back and then reloaded his weapon. As petitioner did not raise the sufficiency of the arson evidence in his habeas petition,

we will not address this allegation of error on appeal.

■ Finally, petitioner has not raised a debatable issue regarding prosecutorial misconduct. The record shows that most of the prosecutor's comments had at least some support in the evidence, and that they did not rise to the level of plain error. Regarding the one comment to which petitioner's attorney objected, petitioner has not shown that the state appellate court's determination as to the effectiveness of the jury admonishment was unreasonable.

Petitioner's request for a certificate of appealability is DENIED and his appeal is DISMISSED.